IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JULIA M. TAYLOR                          :

                                                              :

      v.                                  : Civil Action No. DKC 2006-0156

                                                              :

GIANT FOOD INC., ET AL.                  :

                                                              :

**MEMORANDUM OPINION**

Presently pending in this case are the motions of (1) Plaintiff Julia M. Taylor to remand to state court, pursuant to 28 U.S.C. § 1447(c) (paper 20); (2) Defendants Teamsters Local Union No. 639, International Brotherhood of Teamsters' ("Union"), and Michael David to dismiss (paper 8); (3) Defendant Giant Food, Inc. ("Giant") for partial dismissal (paper 9); and (4) Giant for leave to file an exhibit under seal (paper 11).[1]  The issues are briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the court finds that removal was proper, but will grant the motions of the Union and Mr. David to dismiss.  The remaining claims will be remanded.[2]

---

[1] Plaintiff filed an amended memorandum in support of her motion to remand on February 22, 2006.  (Paper 21).

[2] Plaintiff also filed a motion to stay the court's decision on the motions to dismiss and to file an exhibit under seal until the court ruled on the motion to remand.  (Paper 22).  Plaintiff's motion is unnecessary and will be denied.  If removal was improper, the court would lack subject matter jurisdiction over the claims and could not address Defendants' motions to dismiss.  Thus, the court must address the remand issue first.

I.  **Background**

This is the second time this case is before the court.   On February 27, 2004, Plaintiff filed an action in the Circuit Court for Prince George's County, alleging wrongful and abusive discharge by her employer, Giant, a large grocery chain.   Giant removed the action to this court, asserting federal pre-emption based on § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).[3]  Plaintiff moved to remand, contending that no claim was subject to § 301 pre-emption.   Plaintiff then amended her complaint, this time alleging employment discrimination based on race and sex, retaliatory discharge, and misrepresentation and deceit.   Defendant moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).  On September 13, 2004, this court issued an Order holding in abeyance Plaintiff's motion to remand and Giant's motion to dismiss.   The court found that Plaintiff's claims of discrimination and retaliation were not pre-empted, but that Plaintiff's claim of misrepresentation was too vague.  Accordingly, the court directed Plaintiff to file a more definite statement within fifteen days.

In response to the court's September 13, 2004, Order, Plaintiff filed a document labeled "Plaintiff's More Definite Statement," but which was actually a full-length second amended

_____

[3] Giant filed a notice of removal in the earlier case, *Taylor v. Giant Food*, 04-cv-00710-DKC, on March 9, 2004.

complaint, despite Plaintiff not having moved for leave to amend.

The court found Plaintiff's pleading to be nonresponsive to the

Order, and that the misrepresentation claim remained "unworkably

ambiguous."[4]  Thus, on October 22, 2004, the court issued an Order

dismissing the misrepresentation claim pursuant to Fed.R.Civ.P.

12(e).  The court directed Plaintiff that if she wished to amend

her complaint for a second time, she must move for leave to amend

within ten days.  The court stated that if Plaintiff did not move

to amend within ten days, then, because the court earlier had found

that the remaining claims should be remanded, the case would be

remanded at that time.  Plaintiff did not seek leave to amend and

the court remanded the case to the Circuit Court for Prince

George's County on November 8, 2004.

The case proceeded in state court and was scheduled to go to

trial in February 2006.  On December 30, 2005, Plaintiff amended

her complaint in state court to assert claims against the Union and

Mr. David, the union steward, and to assert a breach of contract

claim against Giant.  On January 19, 2006, the Union and Mr. David

filed a notice of removal in this court.[5]  (Paper 1).  The Union

---

[4]  The court noted that, in "Plaintiff's More Definite
Statement," Plaintiff appeared to withdraw her misrepresentation
claim altogether.

[5]  Although no party raises the issue, the version of the
second amended complaint filed in this court upon removal (paper 3)
has two pages labeled "page five."  The pages appear to differ only
with regard to paragraph 6(h).  On one page five, ¶ 6(h), Plaintiff
(continued...)

and Mr. David assert that Plaintiff's claims "implicate the Union's duty of fair representation and therefore raise a federal question." Thus, the parties contend that the case may be properly removed pursuant to 28 U.S.C. § 1441(b).[6] On January 26, 2006, the Union and Mr. David filed a motion to dismiss, (paper 8), and Giant filed a partial motion to dismiss (paper 9) and a motion to file an exhibit under seal (paper 11). Plaintiff filed a motion to remand the case on February 21, 2006. (Paper 20). Moreover, on February 28, 2006, Plaintiff filed a motion to stay the court's decision on the dismissal motions and Giant's motion to file an exhibit under seal until the court rules on Plaintiff's remand motion. (Paper 22).

## II. Motion to Remand

### A. Standard of Review

It is well-settled that the removing party bears the burden of proving proper removal. *Greer v. Crown Title Corp.*, 216 F.Supp.2d 519 (D.Md. 2002) (citing *Mulcahey v. Columbia Organic Chems.* Co.,

---

[5](...continued)
states that her § 1981 claim does not require her to file an administrative claim. On the other page five ¶ 6(h), Plaintiff refers to a breach of contract claim and does not mention § 1981. The version of the complaint filed in state court appears to include the page five that cites § 1981. (Paper 19). Regardless, because Plaintiff admits in later memoranda that the mention of § 1981 was an oversight and that she does not assert a § 1981 claim against any Defendant, the discrepancy between the page fives is immaterial. The court will not construe Plaintiff's second amended complaint as stating a claim under 42 U.S.C. § 1981.

[6] Giant consented to the removal on January 20, 2006.

29 F.3d 148, 151 (4th Cir. 1994)).  On a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court," indicative of the reluctance of federal courts "to interfere with matters properly before a state court." *Richardson v. Phillip Morris Inc.*, 950 F.Supp. 700, 701-02 (D.Md. 1997) (internal quotation marks omitted); *see also Mulcahey,* 29 F.3d at 151.

Remand is required in some instances and optional in others. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  Additionally, even if the court has original jurisdiction over a civil action, the court nevertheless has discretion to remand a case to state court if, among other things, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Remand is favored in cases turning primarily on questions of state law, because "[n]eedless decisions of state law [by federal courts] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 729 (1966).  Thus, in a case where federal claims are eliminated before trial, "the balance of factors . . . will point toward declining to exercise jurisdiction over the

remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988).

## B. Analysis

In her motion to remand, Plaintiff asserts that removal was improper because she did not plead a federal claim and none of her claims are pre-empted by § 301 of the LMRA.[7]  If, as Plaintiff contends, none of the claims in the second amended complaint are pre-empted, then removal was improper and the court will remand the case to state court.  On the other hand, to the extent that any of Plaintiff's claims in the second amended complaint are pre-empted, the court will possess federal question subject matter jurisdiction over that claim, and may exercise supplemental jurisdiction over the others.  In the second amended complaint, Plaintiff added breach of contract claims against Giant, the Union, and Mr. David.  All parties acknowledge that if federal subject matter jurisdiction exists in this case, it is rooted solely in federal pre-emption with regard to the "breach of contract claim" against the Union and Mr. David.[8]

---

[7] Plaintiff also asserts that removal was improper because the case was removed more than one year after its commencement. (Paper 21, at 17-18).  The one-year limitation in 28 U.S.C. § 1446(b) applies only in cases "removed on the basis of jurisdiction conferred by section 1332 of this title."  This case was not removed on the basis of diversity jurisdiction and therefore the time limit in § 1446(b) is not applicable.

[8] The court previously determined that the discrimination and retaliation claims against Giant were not pre-empted.  Moreover,
(continued...)

## 1.  Pre-emption Doctrines

Defendants maintain that removal is proper because, although Plaintiff labels her claim against the Union and Mr. David as "breach of contract" and "breach of contract (breach of fiduciary duty)," the claim is in actuality a claim of fair representation, which is governed by federal labor law.  To determine whether removal is proper based on federal pre-emption, it is necessary to distinguish between the doctrines of ordinary conflict pre-emption and complete pre-emption.  *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370-71 (4th Cir. 2003).  Under the doctrine of conflict pre-emption, state laws that conflict with federal laws are pre-empted, and pre-emption is asserted as a federal defense to the plaintiff's state court law suit.  *Id*. Because conflict pre-emption is a "defense," it does not generally appear on the face of a plaintiff's complaint, and thus is not the

---

[8](...continued)
neither party contends that the newly asserted breach of contract claim against Giant is pre-empted.  In its opposition memorandum, Giant states that Plaintiff also amended her complaint to assert a discrimination claim against Giant pursuant to 42 U.S.C. § 1981 and thus the court has subject matter jurisdiction based on the § 1981 claim.  As noted, although Plaintiff mentions § 1981 in the section of her second amended complaint addressing administrative exhaustion, it is not mentioned elsewhere in her complaint. Moreover, Plaintiff acknowledges in her reply memorandum that the inclusion of a reference to § 1981 was a typographical error and that she does not assert such a claim against Giant.  The court will not interpret Plaintiff's second amended complaint as asserting a § 1981 claim against any Defendant.

proper basis for removal to federal court. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *Sonoco*, 338 F.3d at 371.

Conversely, with complete pre-emption, there is a proper basis for removal:

> In the case of complete preemption, however, Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63-64, 107 S.Ct. 1542. That is to say, the doctrine of complete preemption "converts an ordinary state common law complaint into one stating a federal claim." *Id*. at 65, 107 S.Ct. 1542. Thus, the doctrine of complete preemption serves as a corollary to the well-pleaded complaint rule: because the state claims in the complaint are converted into federal claims, the federal claims appear on the face of the complaint. *Id*. at 63-65, 107 S.Ct. 1542.

*Darcangelo v. Verizon Commc'ns Inc.*, 292 F.3d 181, 187 (4th Cir. 2002).

## 2. Pre-emption and the LMRA

Section 301 of the LMRA, 29 U.S.C. § 185(a), provides, in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

It is settled law that any claims that require the interpretation of a collective bargaining agreement ("CBA") are completely pre-

8

empted by § 301 of the LMRA.   Thus, regardless of how a plaintiff may label her claim, it is construed as a claim brought pursuant to § 301 of the LMRA and is properly removed.   *See Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 559-60 (1968); *McCormick v. AT & T Techs., Inc.*, 934 F.2d 531, 534 (4th Cir. 1991), *cert. denied*, 502 U.S. 1048 (1992).   The Supreme Court has provided the rationale for complete pre-emption in this context:

> The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute.   Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of [*Textile Workers Union v.*] *Lincoln Mills*, [353 U.S. 448 (1957),] requiring issues raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor policy.
>
> More important, the subject matter of § 301(a) "is peculiarly one that calls for uniform law."   *Pennsylvania R. Co. v. Public Service Comm.*, 250 U.S. 566, 569, 40 S.Ct. 36, 37, 64 L.Ed. 1142; *see Cloverleaf Butter Co. v. Patterson*, 315 U.S. 148, 167-169, 62 S.Ct. 491, 501-503, 86 L.Ed. 754.   The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.   Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems

would tend to stimulate and prolong disputes
as to its interpretation. Indeed, the
existence of possibly conflicting legal
concepts might substantially impede the
parties' willingness to agree to contract
terms providing for final arbitral or judicial
resolution of disputes.

The importance of the area which would be
affected by separate systems of substantive
law makes the need for a single body of
federal law particularly compelling. The
ordering and adjusting of competing interests
through a process of free and voluntary
collective bargaining is the keystone of the
federal scheme to promote industrial peace.
State law which frustrates the effort of
Congress to stimulate the smooth functioning
of that process thus strikes at the very core
of federal labor policy. With due regard to
the many factors which bear upon competing
state and federal interests in this area,
*California v. Zook*, 336 U.S. 725, 730-731, 69
S.Ct. 841, 843-844, 93 L.Ed. 1447, we cannot
but conclude that in enacting § 301 Congress
intended doctrines of federal labor law
uniformly to prevail over inconsistent local
rules.

*Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962) (footnote omitted).

## 3.   Pre-emption and the duty of fair representation

To the extent that a plaintiff claims a union breached an express duty that is defined in the CBA, a court must interpret the CBA in order to determine the nature and extent of the duty. Thus, § 301 of the LMRA is implicated and the plaintiff's claim would be completely pre-empted, providing a proper basis for removal. *See Avco Corp.*, 390 U.S. at 559-60; *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1168 (5th Cir. 1989), *cert. denied*, 495 U.S.

946 (1990) ("When a collective bargaining agreement imposes a duty of fair representation there is federal jurisdiction over a claim for breach of that duty under section 301.").

The pre-emption doctrines also are applicable with regard to claims implicating the duty of fair representation.[9]  In *Vaca v. Sipes*, 386 U.S. 171 (1967), the Supreme Court described the duty:

> It is now well established that, as the exclusive bargaining representative of the employees in [the] bargaining unit, the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining with [the employer], *see Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048; *Syres v. Oil Workers International Union*, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785, and in its enforcement of the resulting collective bargaining agreement, *see Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370. . . . Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. *Humphrey v. Moore*, 375 U.S., at 342, 84 S.Ct., at 367.

---

[9] The duty of fair representation implicates section 9(a) of the National Labor Relations Act (NLRA), 29 U.S.C. § 159(a), which states, in part:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees . . . shall be the exclusive representatives of all the employees . . . for the purposes of collective bargaining.

*Vaca*, 386 U.S. at 177.  As noted, the duty of fair representation derives from the union's status as the exclusive bargaining agent. The court in *Vaca* concluded that an alleged breach of a union's duty of fair representation is "grounded in federal statutes" and that federal law governs the cause of action.[10]  *Vaca*, 386 U.S. at 177.  Although the court determined that state law was pre-empted by this federally created duty, the court did not articulate whether the doctrine of complete or conflict pre-emption was implicated.

This court agrees with the many courts that have held that fair representation claims completely pre-empt state law, and therefore provide a proper basis for removal from state court, even if a plaintiff characterizes his or her claims as state-law claims. For example, in *BIW Deceived v. Local S6*, *Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824 (1st Cir. 1997), the court stated:

> [W]e believe that DFR [duty of fair representation] preemption operates in much the same fashion as section 301 preemption. While we have not heretofore inquired whether DFR preemption, like section 301 preemption, works an exception to the well-pleaded complaint rule, the answer seems obvious. Because federal law completely governs the duties owed by an exclusive collective

---

[10] Federal jurisdiction over a fair representation claim is grounded in 28 U.S.C. § 1337, which provides, in part, that "the district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce."  *See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 83 (1989).

> bargaining representative to those within the
> bargaining unit, *see Vaca*, 386 U.S. at 183,
> 87 S.Ct. at 913, and because this
> manifestation of congressional will so closely
> parallels Congress's intentions with regard to
> section 301, *see Avco Corp. v. Aero Lodge No.
> 735*, 390 U.S. 557, 561-62, 88 S.Ct. 1235,
> 1237-38, 20 L.E.2d 126 (1968) (citing [*Textile
> Workers Union v.*] *Lincoln Mills*, 353 U.S.
> [448] at 457, 77 S.Ct. at 918 [(1957)]), we
> hold that a district court possesses federal
> question jurisdiction when a complaint, though
> garbled in state-law raiment, sufficiently
> asserts a claim implicating a duty of fair
> representation. We also hold, as a logical
> corollary, that DFR preemption warrants resort
> to the artful pleading doctrine.

*BIW Deceived*, 132 F.3d at 831-32. In addition, in *Richardson*, the

United States Court of Appeals for the Fifth Circuit explained:

> We hold that where the NLRA federal law duty
> of fair representation, actionable in federal
> court, preempts a state law claim, the suit
> asserting such a claim arises under section
> 1337 and may be removed to federal court just
> as the suit asserting state law claims
> preempted by section 301 of the [LMRA] may be
> removed under *Avco* and its progeny. *Avco*
> recognized removal based on section 301's
> complete, displacing preemption of state law
> because of congressional intent that federal
> (and state) courts create and administer a
> comprehensive body of *federal* law for the
> court enforcement of collective bargaining
> agreements. Under *Vaca*, the NLRA duty of fair
> representation for the enforcement of which a
> federal (and state) court action is
> authorized, completely preempts state law
> because of the congressional intent that
> federal law, developed to further the goals of
> the NLRA, entirely govern the duties which an
> NLRA collective bargaining representative
> owes, by virtue of its position as such, to
> the workers it represents in that capacity.
> We cannot conceive that Congress intended to
> complete displacive preemption of the *Avco*
> variety in the section 301 context, but not in

13

> the context of the duty of fair representation
> arising from a union's status as an exclusive
> collective bargaining agent under the NLRA.

*Richardson*, 864 F.2d at 1169-70.  Several district courts also have

held that fair representation claims completely pre-empt state law.

*See Cahoon v. Int'l Bhd. of Elec. Workers Local 261*, 175 F.Supp.2d

220, 225-27 (D.Conn. 2001) (holding that fair representation claims

completely pre-empt state law); *Madison v. Motion Pictures Set

Painters & Sign Writers Local 729*, 132 F.Supp.2d 1244, 1258

(C.D.Cal. 2000) (holding that removal was proper where the

plaintiff's claims were "subsumed within the duty of fair

representation" and thus completely pre-empted).[11]   *See also

Peterson v. Air Line Pilots Ass'n Int'l*, 759 F.2d 1161, 1169-70 (4th

Cir. 1985), *cert. denied*, 474 U.S. 946 (1985) (noting the

importance of the federal interest in fair representation claims).

## 4.  Plaintiff's Claims

Having concluded that fair representation claims, whether

based on breach of an express duty derived directly from the CBA or

implied from the union's status as the exclusive bargaining

---

[11] Several courts have held that duty of fair representation
claims are completely pre-empted pursuant to § 301.  *See, e.g., In
re Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union,
Local No. 173*, 983 F.2d 725, 728 (6th Cir. 1993); *Wilhelm v. Sunrise
Northeast, Inc.*, 923 F.Supp. 330, 336-37 (D.Conn. 1995); *Hess v. B
& B Plastics Div. of Metal Cladding, Inc.*, 862 F.Supp. 31, 34
(W.D.N.Y. 1994).  To the extent that a fair representation claim
does not require the interpretation of a collective bargaining
agreement, § 301 does not appear to apply.  Accordingly, complete
pre-emption pursuant to § 301 and complete pre-emption by the duty
of fair representation should be distinguished.

representative, completely pre-empt state law, it also is necessary to determine the nature of Plaintiff's claim against the Union and Mr. David, the union steward.  Defendants maintain that Plaintiff asserts a fair representation claim.  The court agrees.  Although labeled "breach of contract," the second amended complaint fails to indicate the source of any contract and, more importantly, Plaintiff's second amended complaint alleges actions taken in breach of the duty of fair representation.  Plaintiff refers to the duty of fair representation throughout her claim:

- Plaintiff Taylor was an active and paying member of Union Local 639 at the time of her discharge on 2/28/02.  The union had a *contractual and statutory duty to provide her with fair and untainted representation*.

- Taylor . . . routinely voted in union shop stewards along with other drivers at Giant *to properly and fairly represent them* and to protect their rights. . . .

- Taylor's Union Local 639 shop stewards had a *fiduciary and statutory duty to provide her with fair and untainted representation*.

- Specifically, as a dues paying and active member of labor union Local 639, Taylor was entitled to a *fair duty of representation*, by her shop steward defendant Michael David in and throughout the grievance process. . . .

- Specifically, during the period of 2002-2004, defendant David sat in on some grievance hearings with Taylor concerning her complaints.  David never took notes in the meetings, never defended her in the grievance meetings and accepted every

thing the defendant Giant stated in the meetings. . . .

- Taylor complained from 2002-2004 about David to defendant Union Local 630 and about David's *poor representation, dishonesty and unfair and tainted representation of her* and lack of knowledge of the contract. . . .

- [Taylor] accused [the Union and Mr. David] of *not representing her or protecting her rights*. . . .

- Because of defendants' *breaches and unfair and dishonest representation of her*, Taylor informed defendants that she was pursuing her claims in State Court in July 2003. . . .

- After meeting with [the Union's attorney] Taylor believed that the *Union was not fairly and adequately representing her*.

- As a direct result of defendants David and Union Local 639 actions and failures, they *breached both their fiduciary responsibility and duty to fairly represent Taylor and protect her rights*.

- As a result of defendants' *breach of fair representation and fiduciary duties owed to Taylor*, Taylor suffered damages both financially and emotionally.

(Paper 3, at 35-40, ¶¶ 138-141, 145, 147, 154, 156, 161, 166-67)

(emphasis added).  In addition, Plaintiff asserts that the Union discriminated against her on the basis of race and gender when it failed to ensure her placement in another position while her medical condition was in dispute, and when it failed to assist her in obtaining other employment, both of which it had done for her white, male, counterparts.  Plaintiff further contends that the

Union acted improperly by failing to pursue her grievances and by acting improperly at an arbitration hearing where Plaintiff maintains the Union omitted evidence and presented Mr. David as a witness against Plaintiff.

The alleged actions, on the part of both the Union and Mr. David, all occur within the scope of Defendants' representation of Plaintiff.  Moreover, Plaintiff points to no other source of duty than that which is either directly provided for in the CBA or implied from Defendants' role as Plaintiff's exclusive bargaining representative.[12]  Regardless of whether Plaintiff's claims implicate an express duty provided for in the CBA or an implied duty from Defendants' status as a representative, the claims are completely pre-empted.[13]  *See Peterson*, 759 F.2d at 1170-71 (holding

_____

[12] In the reply memorandum, Plaintiff states that her "confidential relationship" with the Union and Mr. David gave "rise to a requirement that the union defendants were required to exercise a duty of care as to her when it was acting on her behalf." (Paper 27, at 5). Any duty that Defendants may have had in this regard is subsumed within the duty of fair representation.

[13] In both Plaintiff's motion to remand and her reply memorandum, Plaintiff appears to alter the characterization of her claims.  For example, in her motion to remand, Plaintiff describes her claims as those of "conspiracy, collusion, [and] illegal activities." However, Plaintiff also states that "a union breach's [sic] its contract with the union member when it breach's [sic] its duty of fair representation." (Paper 21, at 24).  In Plaintiff's reply memorandum, she argues that her claims include "dishonesty, conspiracy, intimidation, coercion, threatening behavior, illegal activities, hostility, bad faith, negligence, breach of fiduciary duties and breach of fair representation."  Notwithstanding the various labels Plaintiff attaches to her claims, the alleged acts in the second amended complaint occur in the context of the union and Mr. David's representation, and the allegations in Plaintiff's second amended complaint are properly construed as a fair representation claim.

that the plaintiff's state law claims, including a civil conspiracy claim, were pre-empted where the state claims were "essentially identical to the duty of fair representation claim" and noting that "in light of the significant overlap of the state and federal claims, it becomes apparent that [the plaintiff] seeks to pursue the state claims merely to take advantage of more liberal remedies").

Plaintiff's other arguments do not alter this result. Plaintiff's contention that removal is improper because there is no federal cause of action available to her is untrue.  This case is distinguishable from those cases Plaintiff relies on in which there either was not a federal cause of action or where the plaintiff did not have standing to assert a claim under federal law.  Here, there is both a cause of action - a fair representation claim - and Plaintiff has standing to assert the claim.  In addition, to the extent that Plaintiff argues she cannot obtain the relief she seeks pursuant to federal law and that this inability therefore closes off the federal claim rendering removal improper, Plaintiff is mistaken. *See Avco*, 390 U.S. at 560-61 (holding that § 301 claim was properly removed to federal court even where the relief the plaintiff sought was obtainable only in state court).

Plaintiff also asserts, without citing any authority, that if her claim was time-barred then removal was not proper because "[t]his court can only have jurisdiction over a Federal claim that actually existed at the time of removal."  Plaintiff is incorrect. Whether this court has subject matter jurisdiction is an entirely

18

separate inquiry than whether Plaintiff's claim is time-barred.  To the extent that the court has jurisdiction but Plaintiff's claims are time-barred, the proper action is for the court to dismiss the claims, and not, as Plaintiff asserts, to conclude that removal was improper.

Finally, Plaintiff cites cases discussing NLRB exclusive jurisdiction and states that she believes that filing a claim with the NLRB would have been futile based on her past experiences. Plaintiff appears to confuse the law of unfair labor practices with the law of fair representation claims.  The NLRB does not have exclusive jurisdiction to resolve fair representation claims, even though these claims may also constitute an unfair labor practice pursuant to the NLRA.  *See Vaca*, 386 U.S. at 177-87.  Moreover, no party is asserting that Plaintiff's claims should have been brought before the NLRB.  Instead, the issue is whether Plaintiffs' claims were properly removed to this court or should be remanded to the state court.  To the extent that Plaintiff's claims are completely pre-empted, they are properly heard before this court.

Accordingly, the court finds that removal was proper and that it has subject matter jurisdiction to entertain Plaintiff's claims.

**III.  Motion to Dismiss**

**A.  Standard of Review**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.[14] *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, a Rule 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court must disregard the contrary allegations of the opposing party. *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873

---

[14] Although the Union and Mr. David assert that their motion to dismiss is brought pursuant to Fed.R.Civ.P. 12(b)(1) (relating to subject matter jurisdiction) and 81(c) (applying federal procedural rules to removed cases), it is properly resolved under Fed.R.Civ.P. 12(b)(6) (failure to state a claim).

(4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed.R.Civ.P.8(c) and is not usually an appropriate ground for dismissal. *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D. Md. 2002); *Gray v. Mettis*, 203 F.Supp.2d 426, 428 (D. Md. 2002). However, dismissal is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir. 1996). *See* 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 714 (3rd ed. 2004) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).").

**B.   The Union Defendants' Motion to Dismiss**

The Union and Mr. David assert that Plaintiff's claims must be dismissed because: the claims are time-barred; Plaintiff failed to exhaust available internal remedies; and, with regard to the claims against Mr. David, federal law prohibits the liability of individual union representatives. Although Plaintiff did not file

an opposition memorandum in response to this motion[15], in her motion to remand and reply memorandum, Plaintiff argues that she asserts state law claims and that the applicable state statute of limitations for breach of contract/fiduciary duty is three years, and had not run at the time she commenced the action.

Defendants maintain that pursuant to federal law, the applicable limitations period for commencing a fair representation action is six months, and that Plaintiff's second amended complaint reveals that she waited almost two years after the alleged acts of the Union and Mr. David to file suit.

Section 10(b) of the NLRA, 29 U.S.C. § 160(b), provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge.[16] In *DelCostello v. In'l Bhd. of Teamsters*, 462 U.S. 151 (1983), the Supreme Court held that this six-month statute of limitations should apply to "hybrid" claims brought against the employer for breach of a CBA and against a union for breach of the duty of fair representation.    *Id*. at 155.   The court explained why it was appropriate to borrow the unfair labor practice statute of limitations:

---

[15]   Plaintiff obtained an extension of time to file her opposition to the motions to dismiss until February 28, 2006 (paper 18), but then did not file an opposition.   Although she filed a motion to remand and to stay consideration of the motions to dismiss, she did not seek and did not obtain any further extension of time to file oppositions to the motions to dismiss.

[16]   "Unfair labor practice" is defined under 29 U.S.C. § 158.

Even if not all breaches of the duty [of fair
representation] are unfair labor practices,
however, the family resemblance is undeniable,
and indeed there is a substantial overlap.
Many fair representation claims . . . include
allegations of discrimination based on
membership status or dissident views, which
would be unfair labor practices under §
8(a)(1) or (2) [of the NLRA].  Aside from
these clear cases, duty-of-fair-representation
claims are allegations of unfair, arbitrary,
or discriminatory treatment of workers by
unions - as are virtually all unfair labor
practice charges made by workers against
unions.  *See generally* R. Gorman, Labor Law
698-701 (1976).  Similarly, it may be the case
that alleged violations by an employer of a
collective bargaining agreements will also
amount to unfair labor practices.  *See id*. at
729-734.

At least as important as the similarity of the
rights asserted in the two contexts, however,
is the close similarity of the considerations
relevant to the choice of a limitations
period.  As Justice Stewart observed in
[*United Parcel Service* v.] *Mitchell* [, 451
U.S. 56 (1981)]:

> "In § 10(b) of the NLRA, Congress
> established a limitations period
> attuned to what it viewed as the
> proper balance between the national
> interests in stable bargaining
> relationships and finality of
> private settlements, and an
> employee's interest in setting aside
> what he views as an unjust
> settlement under the collective-
> bargaining system.  That is
> precisely the balance at issue in
> this case.  The employee's interests
> in setting aside the 'final and
> binding' determination of a
> grievance through the method
> established by the collective-
> bargaining agreement unquestionably
> implicates 'those consensual
> processes that federal labor law is
> chiefly designed to promote- the

> formation of the agreement and the
> private settlement of disputes under
> it.' [*Auto Workers v.*] *Hoosier*, 383
> U.S. [696] at 702, 86 S.Ct., at
> 1111. Accordingly, '[t]he need for
> uniformity' among procedures
> followed for similar claims, *ibid.*,
> as well as the clear congressional
> indication of the proper balance
> between the interests at take,
> counsels the adopting of § 10(b) of
> the NLRA as the appropriate
> limitations period for lawsuits such
> as this." 451 U.S., at 70-71, 101
> S.Ct., at 1567-68

*DelCostello*, 462 U.S. at 170-71 (footnote omitted).

In *Reed v. United Transp. Union*, 488 U.S. 319 (1989), the court clarified its decision in *DelCostello* and cautioned that the decision provided only a narrow exception to the general rule that federal courts should borrow the state statute of limitations for analogous offenses. The court concluded that state personal injury statutes of limitations, and not the NLRA's six-month statute of limitations, was applicable to a claim brought under the Labor - Management Reporting and Disclosure Act ("LMRDA") involving an alleged violation of a union member's right to free speech.[17] *Id*. at 324-25. The court, explaining its earlier *DelCostello* decision, stated that the hybrid § 301/fair representation claim raises the need to balance the same interests as an unfair representation claim - namely - "the national interests in stable bargaining

---

[17] The union member plaintiff in *Reed* asserted he was prohibited from seeking reimbursement for "time lost carrying out union duties" because he had previously expressed his views on the union.

relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system." *Id*. at 329-30 (internal quotation marks and citations omitted). The court concluded that these interests are only remotely implicated by the LMRDA claim at issue, which involved an internal union dispute "not directly related in any way to collective bargaining or dispute settlement under a collective-bargaining agreement." *Id*. at 330. Thus, the LMRDA claim was not readily comparable to unfair labor practice claims. Moreover, the court emphasized the strong federal interest in guaranteeing "free speech and association rights in order to further union democracy - that simply had no part in the design" of the six-month statute of limitations for unfair labor practice charges. *Id*. at 332.

As noted, the *DelCostello* opinion addressed only cases involving hybrid § 301/fair representation claims. However, multiple courts of appeal that have addressed the issue both before and after *Reed* have held that the six-month statute of limitations also is applicable where a plaintiff asserts a fair representation claim against a union but does not also assert a claim against the employer for breach of a CBA (i.e., in non-hybrid fair

representation claims).[18]  The primary consideration in these cases is the resemblance of the claim to an unfair labor practice claim.

For example, in *Johnson v. Graphic Commc'ns Int'l Union*, 930 F.2d 1178, 1181 (7th Cir.), *cert. denied*, *Padget v. Graphic Commc'ns Int'l Union*, 502 U.S. 682 (1991), the plaintiffs alleged that the union fraudulently represented that all legal prerequisites to calling a strike had been satisfied, which induced employees to join illegal strikes and caused them to lose their jobs.  The court reasoned that the plaintiffs' fair representation claim was identical to an unfair labor practice claim and therefore that the six-month NLRA statue of limitations was applicable.  The court stated that the same policy considerations that arose in *DelCostello* were present even where the only claim at issue was a fair representation claim against the union.  The court concluded that when a suit "provides a perfect parallel to an unfair labor practice, and when the same federal policies are at stake in both actions, the federal limitations period is significantly more appropriate."  *Id.* at 1183.

Likewise in *Conley v. Int'l Bhd. of Elec. Workers, Local 639*, 810 F.2d 913, 915 (9th Cir. 1987), the court stated that "the essence of [the plaintiff's] complaint is that the union failed to

---

[18] The United States Court of Appeals for the Fourth Circuit has never directly addressed the issue.  However, in *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991), a case following the *Reed* decision, the court held that in the context of the Railway Labor Act the six-month statute of limitations was applicable to a fair representation claim.

act fairly on his behalf" and that the claim is highly analogous to an unfair labor practice claim.  Accordingly, the court held that the six-month statute of limitations applied.  *See also George v. Local Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 100 F.3d 1008, 1014 (D.C. Cir. 1996) (stating that a fair representation claim clearly exhibits a "family resemblance" to an unfair labor practice claim and that the interests cited by the *DelCostello* court are implicated in every fair representation claim because the employer-union bargaining relationship is necessarily affected where a plaintiff asserts that the union has not fairly represented the employee in bargaining or grievance settlements); *Cantrell v. Int'l Bhd. of Elec. Workers, Local 2021*, 32 F.3d 465, 466 (10th Cir. 1994) (holding that the six-month statute of limitations applied to the union members' fair representation claim, which alleged that the union conspired with the union members' employer to create a basis for their discharge); *Richardson* , 864 F.2d at 1167 (citing *DelCostello* and concluding that the six-month statute of limitations applied to fair representation claims); *Eatz v. DME Unit of Local Union Number 3*, 794 F.2d 29, 33 (2nd Cir. 1986) ("Due to the undeniable resemblance and substantial overlap between unfair labor practices and breaches of the duty of fair representation . . . we read *DelCostello* to require that the § 10(b) six-month limitations period also be applied to unfair representation claims standing alone."); *Erkins v. United Steelworkers of Am.*, 723 F.2d 837, 839 (11th Cir. 1984),

*cert. denied*, 467 U.S. 1243 (1984) (stating that a breach of the duty of fair representation constitutes an unfair labor practice; concluding that the presence of the fair representation claim in the hybrid suit made the application of 10(b) appropriate, and thus the six-month limitation period was even *more* appropriate where there was only a fair representation claim); *Nellis v. Air Line Pilots Ass'n*, 815 F.Supp. 1522, 1535 n.11 (E.D.Va. 1993), *aff'd on other grounds*, 15 F.3d 50 (4th Cir. 1994), *cert. denied*, 513 U.S. 808 (1994) (holding that the six-month statute of limitations applied where the "gravamen of plaintiffs' complaint is that [the union] did not sufficiently negotiate on plaintiffs' behalf with the acquiring airlines" and a judgment in favor of the plaintiffs would likely have a direct impact on relations between the union and future acquiring airlines).[19]

The six-month statute of limitations is applicable to Plaintiff's fair representation claim.  The gravamen of Plaintiff's

---

[19]   There are several cases where courts have held that the six-month statute of limitations was not applicable to fair representation claims.  These cases are factually distinguishable because they involve disputes entirely internal to the union.  For example, in *Bullock v. Dressel*, 435 F.3d 294, 301 (3rd Cir. 2006), the court, citing its earlier opinion in *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3rd Cir. 1991), held that the six-month statute of limitations was not applicable where the plaintiffs did not assert any claim against the employer, but claimed only that the union violated its duty of fair representation by failing to refer them through its hiring hall and taking other retaliatory actions.  *See also Brenner*, 927 F.2d at 1295 (holding that the six-month statute of limitations was not applicable where the dispute was entirely internal to the union and involved the union's failure to refer the plaintiffs through its hiring hall).

claim is that the union and union steward acted unfairly and arbitrarily, and discriminated against Plaintiff in the context of the grievance process.  Plaintiff's claims are highly similar to unfair labor practice claims.  *See Delcostello*, 462 U.S. at 170 ("[D]uty-of-fair-representation claims are allegations of unfair, arbitrary, or discriminatory treatment of workers by unions - as are virtually all unfair labor practice charges made by workers against unions.").  Moreover, Plaintiff's claim against the union is brought *in conjunction with* her claim against Giant, for discrimination, retaliation, and breach of a settlement contract. Notwithstanding that the court previously determined that Plaintiff's discrimination and retaliation claims are not pre-empted under the LMRA because they do not require an interpretation of the CBA, the case still is highly similar to the hybrid claim asserted in *DelCostello* in that the court must balance "the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system." *Reed*, 488 U.S. at 329-30.  Put simply, if Plaintiff were to succeed on her claim against the Union and Mr. David, it would have a direct impact on the relationship between the Union and Giant.  *See Nellis*, 815 F.Supp. at 1535 n.11.

The six-month limitations period begins to run "from the time when he discovered his injury or should have discovered it through the exercise of reasonable diligence." *Smith v. Local 7898, United*

*Steelworkers of Am.*, 834 F.2d 93, 95 (4th Cir. 1987).  It is clear from the face of Plaintiff's second amended complaint that Plaintiff challenges actions taken by the Union and Mr. David from 2002 through January 2004.  Plaintiff did not assert her claim against the Union and Mr. David until December 2005.  Accordingly, the claim is time-barred and will be dismissed.[20]

## IV.  Conclusion

Plaintiff asserts a fair representation claim against the Union and Mr. David, which completely pre-empts state law.  Thus, removal was proper.  Plaintiff's fair representation claim was untimely and will be dismissed with prejudice.

Because the court has dismissed all claims over which it has original jurisdiction, pursuant to 28 U.S.C. § 1367(c) the court will decline to exercise supplemental jurisdiction over the remaining claims and will remand the case to state court.  *See Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001).  The court need not address Giant's motions for partial dismissal and to file an exhibit under seal.[21]   A separate Order will follow.

                    /s/
                    DEBORAH K. CHASANOW
                    United States District Judge

---

[20] The court need not address Defendants' other arguments that Plaintiff failed to exhaust administrative remedies and that Mr. David cannot be held liable under federal law.

[21] The document that Giant moves to seal has not been filed with this court.